Our next case for the day is Consul v. Progressive American Insurance Company. And we'll hear first from the attorney for the appellant, that is Mr. Richardson. And then we'll go ahead and we'll start with the Charbel Consul v. Progressive American Insurance Company. Thank you. My name is Adam Richardson. I represent the Plaintiff Appellant Charbel Consul, who is the insured in this case. This is, of course, a bad faith case that the insured brought against Progressive is insure. And the district court rendered a summary judgment in favor of the insurer. The district court found both that there was no dispute of material facts on whether Progressive committed bad faith, and then further determined that even if there was, it did not cause the excess judgment to be entered against the plaintiff. We believe that the court erred in both determinations, that there were genuine disputes of material fact. And therefore, we asked the court to reverse and remand for a trial. The first issue, of course, concerns the bad faith claim and whether Progressive committed bad faith. And our argument revolves primarily around two things. The first is the insistence on release of the consortium claim of Dr. Chaucer's wife, who was the injured and the plaintiff in the underlying state for action. And then the second thing that this revolves around is the insistence that Dr. Chaucer hand over the title to Progressive, either transferring ownership or delivering the title so it can be processed with the state. As for the release, there were genuine disputes of material fact about whether the actions and inactions of Progressive constituted bad faith. Mr. Posgay, who is Dr. Chaucer's attorney in the underlying action, made it very clear from the beginning that he represented only Dr. Chaucer and not his wife. When the proposed release was sent to him, he responded and said, I don't represent the wife. I can't release her claim. Progressive insisted, saying, we'll remove the wife if you tell us that she will not make a claim. Mr. Posgay again on December 13th said, I don't represent her. I cannot release that claim. I understand that the judge found that this a proposed release where the Progressive offered to make changes that Mr. Posgay wanted. However, the insistence there was unequivocal. The Progressive wanted the release of the consortium claim and it wasn't just a matter for Mr. Posgay of changing the name because the name was wrong in the release. Let me ask you a question if you don't mind. Oh, of course. So why wasn't this just simple negligence on the part of Progressive in not following up with the wife and determining whether or not a release of any consortium claim was necessary? I think because of the affirmative refusal to really address the Mr. Posgay was raising. So Mr. Posgay said, I don't represent her basically putting the obligation as it should be on Progressive to do further work. And the insistence on including her in the release, I think raises this beyond negligence. I think it would have been negligence if there were... Why wasn't it just a matter of common sense? Just plain ordinary common sense. The doctor has a claim. If he's married, it's obvious that the wife, there's a consortium problem here. Yes, I think that's true. The routine thing that the adjuster would have done is to inquire about the wife. Would you agree to that? Yes, I will agree to that. And that counsel was a little bit deceptive in saying, well, I don't represent her. Well, maybe somebody else is representing her. Yes, sir. So I think... Or maybe she wants to make a claim by herself, pro se. Yes, sir. I will push back a little bit on... I do acknowledge that Mr. Posgay was not as easy to work with as he could have been. I don't think he was deceptive. I think he was truthful when he said that he didn't represent the wife. Well, that may have been truthful, but he was deceptive also. He's hiding the fact that whether she has a claim or not, or whether she has a lawyer, or whatever the situation is. I don't believe that he ever talked to his client, Dr. Troy, sir, or the wife about that. So he didn't have, I think, any knowledge about whether she would be pursuing a claim or whether she did have a lawyer, either whether she would pursue it with a lawyer or pro se. But that gets back to what else Progressive could have done to resolve that. As Ms. Forst, who is the adjuster, acknowledged, she has sent in the past letters directly to spouses to inquire about consortium claims. There was nothing done here. She could have sent a field adjuster to the house to... They knew the address to ask Dr. Trost's wife whether she was going to pursue a consortium claim. This would have been extremely simple for Progressive to do, and Progressive simply failed to do it. Now, to get back to Judge Rosenbaum's question about whether this is a simple negligence or whether it was a bad faith, I think that we've pointed to several instances in this case, a pattern of failures. And I think what that does is it also helps elevate this above simple negligence. If there had been just one failure, okay, negligence. If there had been a second failure, okay, negligence. But we have repeated failures here. We have... And so your argument is that it's really an issue of fact for a jury to resolve as to whether it was negligence or bad faith. Is that... Am I understanding you correctly? Yes, Judge. And so we acknowledge, of course, that under Florida law, negligence isn't enough by itself, but it is relevant. And that, I think, whether it is relevant, the question is for the jury to resolve. And I'm not saying that this is a slam-dunk case for us. I'm not saying that if we go back to the trial court and there's a trial, we are absolutely going to win this. Our position is more modest, simply that there are genuine disputes of material fact on both the bad faith and causation elements that should have been resolved by a jury. On the... I also want to talk a little bit about the title issue. And I just want to, I think, refer the court, as we have in the briefs, to the specific language of the statute, which is 319.30. Under 3A.2, the statute's very clear that a motor vehicle or mobile home should not be considered a total loss if you agree to repair rather than replace. Now, the only thing that does have to happen if the repair exceeds a certain amount is that the owner, and the burdens on the owner, not the insurer, to request that a brand, request to brand the certificate of title with the words total loss vehicle. That doesn't mean that the vehicle does become, under the law, a total loss. It's just that the certificate of title is branded that. And that's the exception specifically provided in A.2. And that's why it takes it out of 3B, which is, which would have placed the burden on the insurer to obtain the certificate of title and send it to the state. And with the two minutes remaining, I then want to talk about causation. The district court decided that... Well, I'm sorry, just to be clear. That last point. So, you're saying there's nothing in the record to show that the injured party, Dr. Choiseur, indicated that he planned to replace the car or repair the car? There's an indication in the record that he planned or indicated a desire to repair the car. That was in the letters that Mr. Posgate sent to Ms. Forrest, pushing back on the counter-offer term that the title be handed over to Progressive. So, that was brought to the attention. So, first, I think that's relevant to whether under the statute it was a total loss or not. And then, second, also to whether Progressive was put on notice of this fact and whether that have affected its determination, whether or not it should have or whether or not under law it was required to obtain the title or not. And then just... I'm sorry. I didn't know if you were going to finish that. I had a quick question on the consortium claim as well. I'm just curious what the statute of limitations was on that. I mean, the accident happened in 2016. Seems like a lot of the negotiation happened also in 2016, but a final decision and trial didn't happen until 2020. So, at some point, based on the statute of limitations, wouldn't Progressive have known for sure whether or not such a claim was going to be brought for purposes of resolving the settlement terms? Yes, Your Honor. And that's a great question. I don't have it at my fingertips what the statute of limitations is. Typically, under Florida statutes, I think it's 9511, it's something like two or four years, depending on the specific type of claim. But I think also in the complaint, because a consortium claim wasn't raised, I think it should have been reasonable to Progressive to... It should have been reasonable for them to understand that there was no consortium claim at the time the lawsuit was filed. And I see that I'm not over my time. So, thank you, and I'll await rebuttal. All right. Thank you, Mr. Richardson. You've reserved five minutes for rebuttal. We will hear from Mr. Kassane. Good morning, Your Honors. Joe Kassane on behalf of Progressive American Insurance Company. I'd first like to address Your Honor's question regarding the statute of limitations. This whole consortium claim was a sham, Your Honor. It was never an issue in this case. The wife testified she did not want to pursue it, and she, in fact, did not pursue it. The moment this claim was filed, it didn't contain a consortium claim. The consortium claim is the greatest of red herrings. But the point to be made, Your Honor, is that once the lawsuit was filed with or without the consortium claim, the demand went through the roof 10 times the policy limits. So, Progressive could not step back in at that point and settle this case. And I do agree with Judge Joe Flatt. This is an issue regarding consortium that should have been determined in 60 seconds. Dr. Choicer is a lawyer. Dr. Choicer has handled personal injury cases. Dr. Choicer was represented. Ms. Forst was dealing with his attorney, Mr. Posgay. And the fact of the matter is that if it was so easy to determine that there was not going to be a consortium claim, then, you know, why didn't she do what she said she's done in other cases, which is to follow up with the wife and obtain an affidavit from her, especially when Mr. Posgay said he was not representing her. And he was very straightforward about that the very first time that the issue was raised. Judge, I agree with you that it's at least a fair point. Perhaps she could have called the wife. I would suggest to the court that's extraordinarily awkward to go behind a claimant who is represented by counsel to ask the wife, are you pursuing a consortium claim? Well, it may or may not be awkward. But she asked specifically the attorney who was representing the claimant. And he said, I don't represent the wife. So, you know, I don't think you can have it both ways. But, Your Honor, in fairness, that is a very coy response by the lawyer. That is the utmost of legalese. And if you look through the record, she had tried five times to contact the lawyer about the consortium claim. She told the lawyer within three days of the accident, we will have to deal with the wife's claim. But here's the most important point. But didn't he tell her the first time that she brought it up to him that he doesn't represent the wife? He didn't say that when it was first brought up, Judge. What he did say is my client's claim is worth the policy limits. I'll be making a demand for the claim. He did not say he did not represent the wife until later in December when Progressive had, in fact, tendered the money in this case. But something I don't want the court to overlook, and I don't think you would, counsel, in arguing this before Judge Corrigan, Judge Corrigan directly asked if Progressive had not pursued this consortium claim, had not tried to resolve this consortium claim, had not made increased efforts because no one was getting back to it, would it then have subjected itself to a bad faith case? And the appellant said, yes. And Judge Corrigan, in his order, said, how can this possibly be bad faith if they're admitting Progressive had to do what they did? And I would suggest to the court that the law, at least in Florida, in the federal district courts, is that when you're trying to protect the insured, Judge Rosenbaum, when you're doing something to protect the insured, in other words, you're not delaying payment, you're not trying to negotiate payment, you're not trying to pay less, you're not trying to make excuses up as to why we shouldn't pay, you're affirmatively out there trying to resolve the claim and trying to do things to help the insured. And if I could, I'd just like to read from Bankston v. Illinois, Your Honors, which is 2002 WL350-72682. Here's what the court said, and it's a short quote. While the carrier's claims adjusting might be subject to criticism, its conduct was motivated by a desire to protect the interest of its insured. Furthermore, there's no evidence that the carrier's request for a broad relief was motivated by self-interest. In short, this is not the type of conduct that would warrant converting a $10,000 policy into a liability policy of over $1.5 million. This is exactly this case. They want unlimited coverage that was never paid for based upon the only thing this woman, Ms. Force, was doing was bending over backwards to try and protect the insured. Well, let's talk about the excess judgment letter because it also does seem to be a dispute as to whether or not that letter was actually received. I think the record shows that he can't remember at least reading it or receiving it. There was no record in Progress' own possession regarding a copy of the letter. And it does seem, I mean, if from $10,000 to $250,000 to you is the roof, a $1.2 million judgment from a $7,000 settlement proposal, then that must be the universe. So what do you have to say about the notice that Progressive provided him that $1 million could be on the table? Judge, so the court addressed this and addressed it very clearly in the order. This is the fact. Ms. Force testified that I sent two excess letters to the insured. Those excess letters are in the record. Those excess letters were produced. The problem that arose is when there was the initial production of the claim file, there was something called an electronic cabinet or a claim file. Those letters were in the electronic file and were later produced. And there is no dispute that they were sent by Ms. Force. And no one has said I didn't receive it. But here's what Judge Corrigan said. Mr. Counsel testified that if he had gotten the letters, he would not have read them and would have put them aside. So I can't find that a failure to tell him about potential excess exposure when the letters do exist, the letters are in the record. The affirmative testimony by the adjuster was I did send the letter and Mr. Counsel would have put them aside. And the judge further said Mr. Counsel submitted an affidavit in this case that Progressive sent to his personal counsel showing he had zero assets. He was completely destitute. So any letter sent to Mr. Counsel, even though he said I wouldn't have read it, if he had read it, Your Honor, it wouldn't have changed anything. He had no money to contribute to a settlement of any kind. And so as a result, the excess letters, again, are something that the court below found provide the causative element to a bad faith claim. Mr. Kucin, I'm sorry, did you finish your point on that? I wanted to ask you a question on something else. No, Your Honor, I did finish my point. Thank you. All right. So I wanted to take you back for a moment to the issue about the consortium claim, because my recollection of the facts is that as soon as it was raised on December 1, in response to the first time it was raised, Mr. Posgay said, I do not represent Dr. Chaucer's wife. And I'm writing to clarify whether you and your company are conditioning the $10,000 bodily injury policy limits tender on Dr. Chaucer's wife being included in the release. And then in response to that, Ms. Forrest did not change the proposed release to omit Chaucer's wife's name. And she didn't follow up in any way or try to contact Chaucer's wife, even though she admitted that she had sent letters to spouses of claimants and other matters. And I mean, the problem here is that Progressive is representing Mr. Consul. And so I wonder, you know, if you want to address the lack of follow up here, knowing that this is the sticking point or one of the two sticking points on whether or not the settlement can go forward. And it's a settlement, which would have been just for the $5,000 in the property loss and the $10,000 in the bodily injury. Yes, thank you for that question, Your Honor. And to point out to the court, the first time the consortium claim was raised in writing, the court is correct, was not till December. But when Mr. Posgay was contacted post-accident, three days after the accident by Progressive on September 9th, three days later, he was told that we're going to need to have the wife's name and that the wife's consortium claim, at least implicitly, was raised at that point. And no objection of any kind was made. Respectfully, I disagree with Your Honor that Ms. Fors didn't change the release. When they raised the consortium claim, she responded by saying, take her name out. But could you please tell me that she's not pursuing a consortium claim? This is a type of gamesmanship, Your Honor, that has plagued and almost ruined the insurance industry in the state of Florida until recent tort reform, as the court knows, completely did away with this. These are multi-conditional gotcha demands that no matter what the carrier does, they say, well, you should have done something different. Here this woman was on her hands and knees. She mentioned it three days later. She called five times, Your Honor, asking for consortium information. She sends a proposed release containing it, but says three times it's proposed. When Mr. Posgay says, I don't represent the wife, the court has the right to examine that. Judge Corrigan did. Mr. and Mrs. Choicer lived together. Dr. Choicer is a lawyer. He knows the importance of a consortium claim, and his wife had no intent on ever pursuing such a claim and did not. But I hear what you're saying, and you raise valid points, but here's the problem, right? The problem is the progressive is representing consul, not Choicer. And so in how progressive is responding to the claim, it needs to be reasonable from consul's point of view. And so while yes, how Posgay responds may play into that in some way. He's told progressive, I don't represent Choicer's wife. And so, I mean, at what point would you say that, is it your position that once progressive said, that's what we need, and Posgay said, well, I don't represent her, then it was game over for this claim? I mean, I'm wondering where you think the responsibilities of progressive ended in representing consul? They didn't. First of all, Judge, consul had his personal lawyer involved in this. Mr. Campione was- Well, yes, but we know also Mr. Campione says he wasn't representing him with respect to the Choicer claims. I mean, that's what it says. He received the affidavit that was sent to him. He filled out the affidavit that was a condition of settlement. He sent that affidavit in on behalf of Mr. Consul. He received progressive's tender letter. He received- But that's true. All of that is true, but this is what he says about it. He says that his attorney, and wasn't dealing with Posgay. And so when he signed the affidavit, he signed it at progressive's request because his attorney was dealing with progressive, not Choicer. Yeah, Your Honor, I don't dispute that, but the lawyer was copied on both of the tender letters that included consortium, and there was no objection ever made. But what the court has realized is Ms. Forrest didn't yank the carpet out from anyone's feet. She sent a proposed letter. No one responded to it. She asked that the letter be amended, which this court in Drury said, once you say it can be amended, it no longer constitutes bad faith under Florida insurance law. She said, take her out of the lease, but please tell me that she's not pursuing a consortium claim because the plaintiff admitted if we hadn't done all this, they would sue us for bad faith for that. That's why Judge Joe Flatt said there's an element of dishonesty here. Why can't lawyers like 50 years ago simply look each other in the eye and say the wife isn't pursuing a consortium claim? Why do we get this level of gamesmanship that has destroyed the professional aspect of this practice in Florida with respect to these kinds of claims? It has turned it into a hornet's nest and a cesspool where lawyers across the table, men and women acting in good faith can say the wife has no consortium claim. It would have taken three seconds, but they elevated it to gamesmanship. They tried to play a gotcha tactic. And if they succeed, then it's just going to encourage everyone else to do what has been done here. And I would suggest to the court that rather than encouraging it, this court should discourage it in the strongest possible terms. So just to clarify, following up on Judge Rosenbaum's question to which you responded, acknowledging that you all were acting on behalf of Mr. Consul, how does all of what you just said regarding gamesmanship benefit Mr. Consul? How was all of that, how was that process that Progressive went through nevertheless in his best interest? It was absolutely in his best interest, Your Honor, because he testified. I had no money, number one. He testified. Number two, I expected Progressive to resolve all claims. He testified, number three, that even a small consortium claim would have been financially ruinous to me. So Mr. Consul himself is standing directly behind Progressive, essentially saying, good job. Get rid of the claims under oath, is what he said. Don't leave me hanging, is what he said. I have no money, is what he said. If you leave even a small claim out there, I'm done. Well, now you have a million-dollar judgment, and that's why we're here today. But thank you for your response. Yes, and I apologize if I'm being passionate, Judge, but it's not why we're here today. No one ever was going to collect this from Mr. Consul. This is a figment of people's imagination. It's something that the courts have allowed to continue when, in fact, Mr. Consul is the largest straw man to ever exist in the history of American jurisprudence. All right. Thank you. Thank you, Mr. Cassin. Well, I think we have your argument. We've given you an extra minute and a half, and I think we've got your argument. Thank you very much. All right, Mr. Richardson, you've got another five minutes. Thank you, Judge Roosevelt. So the first thing I want to pick up on is Mr. Cassin's assertion that a loss of consortium claim here was a sham and that it's a red herring in most personal injury cases. So if that's true and Progressive is a sophisticated party and insurer which handles these kinds of claims a lot, it would have known that it was very unlikely to have been asserted. Well, but Mr. Richardson, let me ask you this. I yes, Mr. Posgay wasn't representing Mr. Schwasser's wife, but the whole thing could have been settled in a matter of five minutes if he had just given him the information about who his wife was, how to contact her. And then if he had given Progressive that information, Progressive could have just gone ahead and obtained the release from the wife. But that's what happened. And really, you know, I think your predecessor was right to concede in the district court that if Progressive hadn't raised the consortium claim, that that would have been bad faith on its part. Would you agree with that? No, I don't think it would have been bad faith on its part. And I have a few responses to that. And first of all, that was actually me in the court. I made that concession. And I think it was a well-advised concession. But the first thing I want to do is let's assume that Mr. Campione did represent Mr. Consul in general. He, and even if he didn't, there was a relationship there, of course. He testified that he would have told Consul to settle without a release of the consortium claim. So there we have an indication that his claim could have settled. And then as we know, the consortium claim wouldn't have been, wasn't going to be raised at all. I also think that... Well, what about the fact that Mr. Campione was copied on all of this communication and never said anything about what you've just mentioned? And never conceded that it was okay to settle without releasing the consortium claim? He also testified that he wasn't really involved or his input wasn't sought in the settlement negotiations. I think if Ms. Forrest had been more fulsome in the discussions with him, not just notifying him about what was going on or... But isn't there, I mean, maybe that's negligence, but is that bad faith? I think it is when you have, as I said before, these series of missteps. I also think that in regard to whether, you know, Mr. Posgay given contact information and approval, what Progressive had was Dr. Troisier's residential address. They knew it. They could have sent the letter directly. This wasn't just a case where they could have sent... In the past, they have sent letters. It just didn't work out in this case. They didn't have the information they needed. They did. And then as for the idea that this was a bad faith setup, we've seen bad faith setups in mostly in the federal district court decisions. We know what those look like. The attorney makes time-limited demands that are absurd, respond in five days, respond in 10 days, with extensions or anything like that when they're requested. Don't communicate at all. Don't tell them what's wrong with a settlement offer or a counteroffer. Here, as I said before, Mr. Posgay was difficult, but he did communicate with them. He did tell Progressive what... But what are your thoughts on Mr. Kassane's position that Mr. Posgay was alerted three days after the claim was made that a release of a consortium claim would be required and then didn't indicate anything in response to that at all for another month and a half? Well, it's true that he didn't do that. But at the same time, it was also clear and it was contemporaneously documented that Ms. Forst understood that he represented only the plaintiff. And so I think it should have been reasonably clear to the adjuster that he would not be in a position to obtain a release for the loss of consortium claim. I also think that this was all in a relatively short time frame, a month, two months, where he did then timely inform Ms. Forst and Progressive that he could not secure the loss of consortium claim because... A release of the loss of consortium claim because he did not represent her. Let me ask you one other thing. So what if we decide, and this is just a hypothetical, what if we determine that it was at worst negligence with respect to the consortium claim? Are you able to show a material issue of fact relying on just the title claim? And if so, why? Yes, because that was a very, very clear misreading, an unreasonable reading of the statute, what was required of the insurer, Progressive, and what was required of Dr. Tricer. As we point to, we did in district court in this court, there was a third district court of appeal case, McKinney, that very clearly defined what a issue that was directly contrary to the position that its adjuster was taking. And that's why we think that wasn't just mere negligence, that arose to bad faith in the sense that it's a term of art, which is that at that point, Ms. Forst wasn't acting with the requisite diligence and haste required of her, which would have been, I think, having a much better understanding of Florida law as the controlling law determined by our state courts. All right. Thank you, Mr. Richardson. And let me just, since I didn't give Mr. Kassane an opportunity to answer that question, here's what I'm going to do. I'm going to let him answer that one question, then I'm going to give you the last word on that, Mr. Richardson. Mr. Kassane, you have a minute and a half to respond to the question that I just asked about whether if we decide that the consortium claim dismissal was just negligence and not bad faith, whether it's enough to show bad faith to rely on the title issue alone. Yes, Your Honor. Thank you for that additional time and I'll speak quickly. This is even more of a setup than the consortium claim. When they originally had this property damage claim, it was $2,000 to $3,000. When they submitted it in a demand, it was $5,000 for a 25-year-old vehicle with 270,000 miles on it that the doctor had bought five years prior for $3,000. And then they say at the 11th hour, we want salvage too. And Progressive says, take it. That's why Judge Corrigan said Osgay refused to take yes for an answer, which is a fantastic line. But when you look at the statute, the plaintiff, the appellant rather, has said it's prolix. I would suggest to you it's Byzantine. But in any event, what Judge Corrigan said, it was a reasonable reading of the statute. And they're absolutely wrong. Subsection 1, which they want to travel under, says that you don't have to submit a total loss. The insurance company doesn't have to submit a total loss if the parties agree to repair. That's directly in the provision they're relying upon. Here, the parties never agreed to repair, so it doesn't apply. But even if Subsection 1 did apply, they would have to submit the title work to the state. This is a matter of public safety, and it simply comes down to who's going to declare this vehicle a total loss and submit it to the state so the citizens of Florida aren't driving around with a licensed vehicle that is a total loss. So under their section, if they had agreed to repair it, which they never whispered they wanted to do, if they had agreed to repair it, then they still would have had to do this. And by the way, the vehicle went to the junkyard from the scene. The vehicle was never repaired by Dr. Choyser. He never even laid eyes on it. And the provision... All right. Thank you, Mr. Cassane. Thank you. Mr. Richardson, you have 30 seconds to respond on just that one issue. Thank you. So in our briefs, we made it clear that there were other acts beyond the consortium and the title issue. So if the court found that the handling of the title issue was mere negligence, there is the other... And I'm going to beg the question a little bit because I'm going to assume that the judge should have considered anything else. So are you conceding that if we were to look at just the title issue and the consortium issue, and we were to conclude that the consortium issue was just negligence, that you would lose under the title alone? No, I don't think so. Because under the totality of the circumstances, I do think you need to look at everything. And then as I said, there was a series of missteps here relating to... All right. I'm sorry. Thank you, Mr. Richardson. I think we have your argument. Thank you both. And we will be in recess for the day. Thank you, Your Honors.